IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JERMAINE LEWIS JR, | : |
| Plaintiff, | : |
| v. | : CASE NO. 5:17-CV-00280-MTT-MSH |
| CO II K HALL, *et al.*, | : |
| Defendants. | : |

## ORDER AND
## REPORT AND RECOMMENDATION

Pending before the Court is Defendants' motion to dismiss (ECF No. 29) Plaintiff's Complaint (ECF No. 1). Also pending are Plaintiff's motions to amend (ECF No. 34), appoint counsel (ECF No. 35), and be transferred to another facility (ECF No. 38). Within his motion for transfer, Plaintiff also moves for discovery. 2d Mot. for Transfer 1, ECF No. 38. For the reasons explained below, it is recommended that Defendants' motion to dismiss be granted and Plaintiff's motions to amend and for transfer be denied. Plaintiff's motions seeking appointed counsel and discovery are denied.

## BACKGROUND

Plaintiff's claims arise from his confinement at Macon State Prison ("MSP"). Compl. 5, ECF No. 1. According to his Complaint, on April 25, 2017, Plaintiff was escorted from the "small yard of J-2" back to his cell by Defendant Hall, a prison officer. *Id.* When they reached Plaintiff's cell, Plaintiff noticed that it was dark inside because his cellmate had covered the light and window. *Id.* Plaintiff alleges Defendant Hall opened

1

the cell so Plaintiff could enter but did not handcuff Plaintiff's cellmate in accordance with policy. *Id.* Plaintiff states that when Defendant Hall shut the door to the cell, his cellmate "came at [him] with a tray and started beating" him in the face, head, neck, and shoulders. *Id.* at 5-6. Plaintiff "screamed" for assistance and Defendant Hall "eventually" opened the door and removed Plaintiff from the cell. *Id.* at 6. Plaintiff was placed in the shower where he alleges he sat for approximately an hour without receiving medical treatment for his injuries, although he was "bleeding from [his] face," his "head was swollen and throbbing," and he was in "excruciating pain." Compl. 6. Plaintiff states Defendant Hall later packed his property and brought it to Plaintiff, but portions of it were missing or damaged. *Id.*

Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs. He states Defendant Hall failed to provide him immediate medical care for his facial injuries, which were bleeding, despite Plaintiff's reports of pain and difficulty standing. *Id.* He also alleges he spoke the next morning to Defendant McLaughlin, the warden; Defendant Sales, the unit manager; and Defendant Williamson, a sergeant, about the attack and his need for medical care. *Id.*[1] Plaintiff further states he "continued to complain" and "continued to put in sick calls" concerning his injuries, but Defendants did nothing to ensure Plaintiff received adequate care. *Id.* at 6-7. Plaintiff alleges he continues to suffer from migraine headaches, sharp pains in his head and neck, and worsening vision and hearing as a result of the attack. *Id.* at 7.

Plaintiff further alleges Defendants Hall, Williamson, and McLaughlin retaliated

---

[1] Plaintiff misspelled Defendant Sales' name as "Sale" in his pleadings but the Court finds he clearly intended to refer to Defendant Sales.

against him for complaining and filing grievances about the incident. Plaintiff states Defendant Hall repeatedly threatened him with physical harm because Plaintiff named him in grievances. Compl. 7; *see also* 2d Mot. to Am. Compl. 1, ECF No. 8 (alleging "[Defendant Hall] let be known his knowledge of the Plaintiff seeking civil actions against him and threatened him death along with death of selected family members if the suit wasn't dismissed by the Plaintiff."). Plaintiff also states Defendant Hall "harass[ed]" him "daily," deprived him of food and showers, and tampered with his meals. *See* Compl. 7. Plaintiff alleges that on April 26, 2017, Defendant Williamson "threatened to take the small amount of property [Plaintiff] did have and put [him] on the strip cell if [Plaintiff] didn't stay quiet" about the attack. *Id.* at 6. Plaintiff further alleges that on July 24, 2017, Defendant McLaughlin "approached the cell of Plaintiff harassing him about pending lawsuit," and "instruct[ed] Plaintiff to drop [the] lawsuit if he knew what was good for him." 1st Mot. to Am. Compl. 1, ECF No. 7. Plaintiff also states Defendant McLaughlin threatened to "eleminate [sic] the opportunity of parole from [Plaintiff's] case plan" and keep Plaintiff "in administrative segregation[]" because of his grievances. *Id.*

After a preliminary review, Plaintiff's medical deliberate indifference claims against Defendants Hall, Sales, Williamson, and McLaughlin and his retaliation claims against Defendants Hall, Williamson, and McLaughlin were allowed to proceed. Order 1, January 23, 2018, ECF No. 16. His failure to protect claim against Defendant Hall was dismissed. *Id.* Defendants have filed a motion to dismiss along with a brief in support and affidavit of MSP Coordinator, Lewana Streeter (ECF Nos. 29, 29-1, 29-2, 29-3, 29-4, 29-5, 29-6, 29-7, 29-8, 29-9). Plaintiff has responded to the motion (ECF No. 33) and moved

3

to amend his complaint (ECF No. 34). Additionally, Plaintiff also moves for appointment of counsel, discovery, and transfer to another facility (ECF Nos. 35, 38). These motions are ripe for review.

## DISCUSSION

### I. Defendants' Motion to Dismiss

Defendants move to dismiss for, *inter alia*, Plaintiff's failure to exhaust his administrative remedies. Br. in Supp. of Mot. to Dismiss 2-6, ECF No. 29-1. Because the Court finds that Plaintiff did not exhaust his administrative remedies, it recommends granting Defendants' motion and declines to address Defendants' other arguments for dismissal.

#### A. Exhaustion Standard

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[W]hen a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) (emphasis added). "To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process. If their initial grievance is denied, prisoners must then file a timely appeal." *Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008) (citation and punctuation

omitted).

The argument that a plaintiff has failed to satisfy section 1997e(a) is properly raised in a motion to dismiss. *Bryant*, 530 F.3d at 1375 ("[E]xhaustion should be decided on a Rule 12(b) motion to dismiss[.]"). Further, since dismissal for failure to exhaust is not an adjudication on the merits, the Court can resolve factual disputes using evidence from outside the pleadings. *Id.* at 1376. "[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's versions of the facts as true." *Id.* If, taking plaintiff's facts as being true, the defendant is entitled to dismissal for failure to exhaust, then the complaint should be dismissed. *Id.* "If the complaint is not subject to dismissal at the first step . . ., the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* The defendant bears the burden of proof during this second step. *Id.*

B.  Plaintiff's Failure to Exhaust

Defendants move to dismiss for lack of exhaustion, claiming the Georgia Department of Corrections ("GDOC") has a grievance procedure, which applies to all inmates, that Plaintiff failed to fully utilize before initiating this suit. Br. in Supp. of Mot. to Dismiss 2-6. Plaintiff has responded generally that he either exhausted or attempted to exhaust his administrative remedies and that the grievance process has been "rendered unavailable" by Defendant McLaughlin and GDOC officials. Resp. to Mot. to Dismiss 4-5, ECF No. 33. Because at the first stage of the exhaustion analysis the Court must take

5

Plaintiff's version of the facts as being true, Plaintiff's Complaint cannot be dismissed for lack of exhaustion at this first step. *Turner*, 541 F.3d at 1082; *see also Dollar v. Coweta Cty. Sheriff Office*, 446 F. App'x 248, 251-52 (11th Cir. 2011) (per curiam).

Since the Complaint was not dismissed at the first step, the Court can make factual findings relating to exhaustion. A defendant bears the burden of establishing a lack of exhaustion at the second step of the inquiry. *Turner*, 541 F.3d at 1082-83. The Court makes the following factual findings and determines that Defendants have met their burden regarding Plaintiff's failure to exhaust.

Macon State Prison follows the GDOC's Standard Operating Procedures ("SOPs") regarding grievances. Streeter Aff. ¶ 5, ECF No. 29-2. The SOPs mandate that an inmate must follow a two-step process in order to exhaust his remedies: (1) file an original grievance no later than ten days from the date of the incident giving rise to the grievance; and (2) file an appeal to the Central Office. Streeter Aff. ¶¶ 8, 10, 17 & Attach. 1 at 9-10, ECF No. 29-3. A warden has forty calendar days within which to respond to an original grievance. Streeter Aff. ¶16 & Attach. 1 at 12. An inmate may file an appeal after the warden issues a decision or after the time allowed for the warden to make his decision expires. Streeter Aff. ¶17 & Attach. 1 at 14. The Commissioner has 100 days within which to respond to a grievance appeal. Streeter Aff. ¶ 20 & Attach. 1 at 15.

The Court finds Plaintiff filed two grievances related to his medical deliberate indifference claims. The first, grievance number 242803, was signed by Plaintiff on April 25, 2017, and alleged that Defendant Hall failed to follow policy when placing Petitioner in his cell and also failed to get medical attention for Plaintiff after he was assaulted by his

6

cellmate. Streeter Aff. Attach. 3 at 2, ECF No. 29-5.[2] The grievance was denied on June 20, 2017. A copy of the denial was provided to Plaintiff on July 3, 2017, but he refused to sign the acknowledgement of receipt. Streeter Aff. ¶22 & Attach. 3 at 3. Plaintiff did not appeal the denial of this grievance. Streeter Aff. ¶22. Plaintiff's second grievance relating to medical deliberate indifference, grievance number 241687, was filed on April 26, 2017, and alleged that Defendants Sales, Williamson, and Hall failed to allow him to get medical attention for injuries caused by the assault the previous day. Streeter Aff. ¶23 & Attach. 4 at 2, ECF No. 29-6. This grievance was denied on May 25, 2017, and Plaintiff appealed on May 30, 2017. Streeter Aff. ¶23 & Attach. 4 at 3, 9-10. The appeal was denied on August 25, 2017, and Plaintiff was notified of the decision on September 27, 2017. Streeter Aff. ¶23 & Attach. 4 at 11.[3]

The Court also finds Plaintiff filed two grievances arguably related to his retaliation claims. The first, grievance number 245641, was filed on June 5, 2017, and alleged Defendant Williamson refused to allow him recreation due to Plaintiff having "put in numerous grievances against him [and] his fellow coleagues [sic]." Streeter Aff. ¶24 & Attach. 5 at 2, ECF No. 29-7. This grievance was denied on August 2, 2017, and Plaintiff acknowledged receipt on August 9, 2017. Streeter Aff. ¶24 & Attach. 5 at 3. Plaintiff did

---

[2] The grievance form indicates it was signed by Petitioner on April 25, 2017 but not received until April 26, 2017. Streeter Aff. Attach. A-3 at 2.

[3] Plaintiff also filed grievance number 244802 on June 6, 2017, alleging that he had not received a response to his grievance pertaining to a violation of policy by Defendant Hall (grievance number 242803). Streeter Aff. Attach. 6 at 2, ECF No. 29-8. This grievance was denied on July 13, 2017, and Petitioner did not appeal. Streeter Aff. ¶25 & Attach. 6 at 3.

not appeal the denial of this grievance. Streeter Aff. ¶24. Plaintiff's second grievance related to retaliation, grievance number 251400, was filed on September 7, 2017, and alleged Defendants Hall and Williamson refused to allow him to shower due to the civil suit he filed against them. Streeter Aff. ¶26 & Attach. 7 at 2, ECF No. 29-9. This grievance was denied on November 16, 2017, and Plaintiff acknowledged receipt on December 7, 2017. Streeter Aff. ¶26 & Attach. 7 at 3. Plaintiff did not appeal the denial of this grievance. Streeter Aff. ¶26.

Plaintiff failed to administratively exhaust his remedies regarding his medical deliberate indifference and retaliation claims prior to filing suit. He never appealed the denials of his grievances related to Defendant Hall's alleged failure to get him medical attention on April 25, 2017, or the retaliation claims against Defendants Hall and Williamson. Grievance number 251400, alleging Defendants Hall and Williamson did not allow Plaintiff to shower, was filed on September 7, 2017, after Plaintiff filed his original complaint. As such, it could not have been properly exhausted even if appealed. *See Lyons v. Serrano*, 205 F. App'x 719, 721 n.1 (2006) (per curiam) (refusing to consider grievances filed after the lawsuit as "they are not properly exhausted"). Finally, Plaintiff never filed any grievance at all implicating Defendant McLaughlin. *See generally* Streeter Aff.[4]

---

[4] The failure to mention Defendant McLaughlin specifically in grievance number 241687 filed on April 26, 2017 would not on its own be fatal to Plaintiff's medical deliberate indifference claim against McLaughlin. "A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." *Parzyck v. Prison Health Services, Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010). The exhaustion requirement of Section 1997(e)(a) is "to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Id.* at 1219. Plaintiff's grievance provided notice to prison officials of an alleged problem with Plaintiff receiving medical care. However, there is no evidence that Plaintiff ever filed a grievance alleging retaliation on the part of Defendant McLaughlin.

8

Plaintiff timely appealed the denial of his April 26, 2017 grievance related to Defendants Hall, Williamson, and Sales' alleged failure to ensure medical attention. In order for an inmate to have exhausted his administrative remedies, however, he must complete the grievance process *prior* to filing a civil action. *See, e.g., Brown*, 212 F.3d at 1207. The relevant date for determining whether the administrative remedies are exhausted is the date on which a plaintiff files his initial complaint, not an amended or recast complaint. *See Smith v. Terry*, 491 F. App'x 81, 83-84 (11th Cir. 2012) (per curiam) ("The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint."). Here, Plaintiff appealed the denial of grievance number 241687 on May 30, 2017. Streeter Aff. ¶23 & Attach. 4 at 3, 9-10. The Commissioner had 100 days—until September 7, 2017—to issue a decision. Plaintiff signed his Complaint on June 22, 2017, and it was received by the Court on July 18, 2017. Compl. 8. Plaintiff's appeal was not denied until August 25, 2017. Streeter Aff. ¶23.[5] Plaintiff, therefore, did not exhaust his administrative remedies prior to filing suit.

Citing *Ross v. Blake*, 136 S. Ct. 1850 (2016), Plaintiff argues the grievance procedures were "rendered unavailable," thus relieving him of the requirement to exhaust them. Resp. to Mot. to Dismiss 4-5. In *Ross*, the Court identified three kinds of

---

[5] The Court cannot see a date on the copy of the Grievance Appeal Response submitted by Defendants. Streeter Aff. Attach. 4 at 11. However, Plaintiff has not contradicted Streeter's assertion as to the date of the appeal denial. Moreover, Plaintiff was not notified of the appeal denial until September 27, 2017, indicating that he filed his complaint without waiting for exhaustion of his administrative remedies. *Id.*

circumstances rendering an administrative remedy unavailable. First, "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859. Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* And finally, a remedy is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Plaintiff makes vague allegations as to why the grievance process was rendered unavailable. He states Defendant McLaughlin, along with the GDOC, "has a custom of denying all [Plaintiff's] serious grievances[.]" Resp. to Mot. to Dismiss 5. Plaintiff states the grievance procedure contains "many technical rules" that "are basically made to confuse a common inmate from receiving relief." *Id.* Plaintiff asserts Defendant McLaughlin "has established a policy to deny or destroy certain procedures like actually turning in appeal forms, formal grievances [etc.]" *Id.* at 4. He alleges "inmates paperwork can be intercepted and done away with on the grounds of, the warden being sought as a part of the issue being grieved." *Id.* Plaintiff also alleges he "never received specific responses nor was any (except one) of his responses that were actually signed and acknowledged, given ability to be appealed." *Id.* Finally, he contends he filed appeals that were never processed. *Id.*

Plaintiff's conclusory allegations, however, are not supported by the record. Plaintiff filed ten grievances in 2017, including several related to this lawsuit. Streeter Aff. ¶21 & Attach. 2, ECF No. 29-4. The documents submitted by Defendants show that each

10

of the relevant grievances in this case was investigated and not summarily denied. *See generally* Streeter Aff. A grievance relating to failure to provide medical care, a primary issue in this case, was appealed and properly processed. Plaintiff has not shown that any grievance or appeal was destroyed or "done away with." He has not provided evidence that he attempted, unsuccessfully, to file a grievance or appeal. He has not provided copies of any unprocessed grievances or appeals or even summarized their contents. Plaintiff alleges threats of retaliation, but has not shown this deterred him from filing a grievance or pursuing an appeal, which is a prerequisite for such conduct rendering an administrative remedy unavailable. *Pavao v. Sims*, 679 F. App'x 819, 826 (11th Cir. 2017) (per curiam). The numerous grievances filed by Plaintiff show he was not deterred. Plaintiff's allegations are not credible.

The Court, therefore, concludes Plaintiff failed to exhaust his administrative remedies. It is consequently recommended that Defendants' motion to dismiss for failure to exhaust be granted.

## II. Plaintiff's Motions

### A. Motion to Amend

Plaintiff moves to amend his complaint (ECF No. 34) to re-assert failure to protect and failure to intervene claims against Defendant Hall and to allege Defendant McLaughlin interfered with the grievance process. 3d Mot. to Am. Compl. ¶¶ 1, 2, 3, 6, ECF No. 34. Because Plaintiff already amended his complaint, this motion to amend requires leave of court. Fed R. Civ. P. 15(a)(2). Such leave should be "freely give[n]" when "justice so requires." *Id.* However, "a district court may properly deny leave to amend the complaint

under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004).

Amendment here would be futile. Plaintiff's original failure-to-protect claim against Defendant Hall was dismissed because Plaintiff failed to allege Hall "knew of the specific danger that the inmate who attacked Plaintiff posed to Plaintiff or any other inmate" and because Hall's alleged violation of prison policy when placing Plaintiff in his cell did not show deliberate indifference but "at most a form of negligence." Order & R. & R. 8-9, ECF No. 13; Order 1-2, January 23, 2018 (adopting recommendations). Plaintiff has added to his original complaint by stating the following:

> J-2 is Tier II long term administrative lockdown created for violent inmates and is the most high security housing units at Macon State which house 96 inmates 2 men to a cell. All security procedures and [policies] are to prevent these inmates from assaulting on[e] another or staff. These inmates are all classified either STG (security threat group) or STI (security threat individual). All inmates must be handcuffed upon entering or exiting their cells and escorted by two officers. All cellmates must be handcuffed as well to prevent the risk of assault to staff or other inmates. Windows must not be covered to obstruct the view by observing officers and officials. CO II Kelvin Hall has been working at Macon State Prison in Tier II administrative [segregation] and has intimate knowledge of the high possibility of violating security measures due to the many examples of violence not only at MSP but at other level V prisons also. Not to mention every inmate housed in [Macon State Prison's] Tier II program has a door chart that clearly states, "threat to safe and secure operations of facility."

3d Mot. to Am. Compl. ¶1. While Plaintiff's proposed amendment adds additional information as to the prison policies and the general nature of inmates housed with Plaintiff, it does not allege Defendant Hall had subjective knowledge of a risk of serious harm to Plaintiff by the inmate who attacked him. *See Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (per curiam) (affirming dismissal of failure-to-protect claim where the

12

plaintiff did not provide notice to prison officials that he was in danger from the specific inmate who attacked him). Plaintiff's proposed amendment would, at most, show negligence by Defendant Hall which is insufficient to state a claim for failure to protect.

Plaintiff also re-asserts his claim that Defendant Hall failed to timely intervene to stop the assault. Plaintiff's original failure-to-intervene claim was dismissed due to his failure to allege "specific facts describing how long Defendant Hall witnessed the attack or whether he had the means to stop the assault or call for assistance." Order & R. &R. 9; Order 1-2, January 23, 2018. In his original complaint, Plaintiff stated that, after the assault began, he "screamed" for Defendant Hall to open the door and that "it seemed like forever" before Hall pulled him out of the cell. Compl. 6. Plaintiff now asserts Officer Hall "eventually" opened the door and that "[t]here was no way to determine the time of the assault" or "how long exactly" he was beaten due to the traumatic injury to his head. 3d Mot. to Am. Compl. ¶3. Plaintiff's proposed amendment is not materially different than his original allegation and still fails to allege facts describing how long Defendant Hall witnessed the assault and whether he had the ability to stop it sooner. Plaintiff's proposed amendment would thus be dismissed for the same reasons as the original claim.[6]

Finally, Plaintiff's motion to amend adds an allegation that Defendant McLaughlin "has made it a practice of allowing subordinates to tamper and interfere with the processing of grievances and those that are processed are systematically denied making it impossible

---

[6] Defendants do not assert a failure to exhaust administrative remedies in response to the motion to amend even though Plaintiff's grievance filed on April 25, 2017, included an allegation that Defendant Hall violated policy by not handcuffing Plaintiff's cellmate. Streeter Aff. ¶22 & Attach. 3 at 2. According to Ms. Streeter, Plaintiff did not appeal this grievance denial. Streeter Aff. ¶22.

13

to remedy any serious concerns." 3d Mot. to Am. Compl. ¶6. To the extent this allegation addresses a failure-to-exhaust defense, that issue is discussed above. To the extent Plaintiff is attempting to raise a new claim, however, "a prisoner does not have a constitutionally protected liberty interest in an inmate grievance procedure." *Dunn v. Martin*, 178 F. App'x 876, 878 (11th Cir. 2006) (per curiam); *see also Toenniges v. Ammons*, Case No. 1:09-CV-165 (WLS), 2013 WL 6632134 *1 (M.D. Ga. Dec. 16, 2013) (dismissing claim asserting hinderance of grievance process). Amendment on this ground, therefore, would be futile. Accordingly, it is recommended that Plaintiff's motion to amend be denied.

B. Motion to Appoint Counsel

For the second time, Plaintiff requests that he be appointed counsel (ECF No. 35). Plaintiff's first request (ECF No. 11) was denied. Order & R. & R. 4. As previously explained, pursuant to 28 U.S.C. § 1915(e)(1), the district court "may request an attorney to represent any person unable to afford counsel." There is, however, "no absolute constitutional right to the appointment of counsel" in a § 1983 lawsuit. *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987) (per curiam). Appointment of counsel is a privilege that is justified only by exceptional circumstances. *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982). In deciding whether legal counsel should be provided, the court considers, among other factors, the merits of Plaintiff's claim and the complexity of the issues presented. *Holt v. Ford*, 862 F.2d 850, 853 (11th Cir. 1989). Plaintiff has failed to present any extraordinary circumstances which would justify the appointment of counsel in this case—he has filed pleadings, motions, and responses to Defendants' motions. Plaintiff's request for court-appointed counsel is denied.

C. Motion for Transfer to Another Facility

Plaintiff has filed a motion asking the Court to order him transferred to another facility (ECF No. 38). This motion is construed as a motion for preliminary injunctive relief. A preliminary injunction is appropriate only where the movant demonstrates that: (a) there is a substantial likelihood of success on the merits; (b) the preliminary injunction is necessary to prevent irreparable injury; (c) the threatened injury outweighs the harm that a preliminary injunction would cause to the non-movant; and (d) the preliminary injunction would not be adverse to the public interest. *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001).

This is Plaintiff's second motion requesting transfer. His previous motion (ECF No. 12) was denied. Order & R. & R. 16-18; Order 2, January 23, 2018. In his first motion, he complained that he was being harassed, mistreated, and threatened as a result of this lawsuit. 1st Mot. to Transfer 1, ECF No. 12. This Court recommended the motion be denied because Plaintiff did not meet his burden of showing relief was necessary to prevent irreparable injury. Order & R. & R. 16. Plaintiff did not demonstrate his ability to pursue the lawsuit had been affected or allege specific facts to show he was in imminent danger of being harmed. *Id*. at 17. Plaintiff's second motion is similarly defective and should be dismissed as Plaintiff has failed to show a "substantial likelihood of success on the merits." *See S. Monorail Co. v. Robbins & Myers, Inc.*, 666 F.2d 185, 186 (5th Cir. Unit B 1982) ("A preliminary injunction may not issue unless the movant carries the burden of persuasion as to all four prerequisites."). Accordingly, it is recommended that Plaintiff's motion for transfer (ECF No. 38) be denied.

D.     Motion for Discovery

Within his second motion for transfer, Plaintiff also requests permission to conduct discovery. 2d Mot. for Transfer 1, ECF No. 38. On March 9, 2018, the Court issued a text-only Order staying discovery in the case pending the resolution of Defendants' motion to dismiss. Text-only Order, ECF No. 32. That motion remains pending. Plaintiff's motion for discovery, therefore, is denied. Plaintiff may seek discovery at a later date if any of his claims proceed further.

**CONCLUSION**

For the reasons explained above, it is recommended that Defendants' motion to dismiss (ECF No. 29) be granted and that Plaintiff's motions to amend (ECF No. 34) and for transfer (ECF No. 38) be denied. Plaintiff's motions for appointment of counsel (ECF No. 35) and discovery (ECF No. 38) are denied.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof. The district judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the

consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

SO ORDERED and RECOMMENDED, this 1st day of November, 2018.

S/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE